WELCH, Judge.
Oscar Levell McMillian was convicted of first-degree domestic violence, a violation of § 13A-6-130, Ala.Code 1975. The trial court sentenced McMillian, as a habitual felony offender, to life in prison. No post-trial motions were filed. This appeal followed.
On September 21, 2007, Lakeysha Addison got off work from her job at a steam plant and went home to get McMillian, her boyfriend, to go shopping. McMillian had been telephoning Addison at work repeatedly, and Addison was told to inform McMillian to stop calling.
McMillian and Addison were in the car driving to the store, and Addison was driving. They began to argue about Addison’s cellular telephone, and McMillian accused Addison of seeing another man. Addison testified that she was sitting in the driver’s seat when McMillian put her vehicle in park at a stoplight, leaned across the vehicle, and bit her left eye out of the socket.
Addison lost consciousness; when she woke up, she was in the passenger seat and McMillian was in the driver’s seat driving. Addison got out of the car as it was moving and ran to a neighbor’s house and alerted the police. Police arrived, and Addison gave them information regarding her vehicle. Two to three days later, Addison’s vehicle was found in Satsuma. Police were unable to locate McMillian, and an arrest warrant was en *851 tered in the National Criminal Information Center’s database. In April 2008, McMillian was located in Oregon and was extradited to Alabama.
Several surgeries were performed on Addison’s eye; however, she is now blind in her left eye. Dr. Mark Brown treated Addison on the date of her injury and testified at trial that the injury which Addison received was consistent with a bite-type action. (R. 142.) However, Dr. Brown testified that when he treated her there were no bite marks on Addison’s face.
McMillian argues on appeal that the trial court erred in denying his motion for a judgment of acquittal. Specifically, McMillian argues that the State did not present sufficient evidence to convict him of first-degree domestic violence because, he says, the State did not present sufficient evidence that a “deadly weapon” or a “dangerous instrument” was used in the commission of the offense. McMillian bases this contention on the holding of the Alabama Supreme Court in Ex parte Cobb, 703 So.2d 871 (Ala.1996).[1]
This Court has held:
“With respect to the suffieiency-of-the-evidenee claim, it is well settled that ‘ “[i]n determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala. 1985). ‘“The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘“When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Bankston v. State, 358 So.2d 1040, 1042 (Ala.1978).”
Williams v. State, 10 So.3d 1083, 1086 (Ala.Crim.App.2008).
To convict a defendant of the offense of first-degree domestic violence, the prosecution must prove the following: that a person “[1] with the intent to cause serious physical injury to another person ... [2] causes serious physical injury to any person [3] by means of a deadly weapon or a dangerous instrument,” § 13A-6-20, Ala. Code 1975, and “[4] the victim is a current or former spouse ... or a person who has or had a dating or engagement relationship with the defendant.” § 13A-6-130, Ala.Code 1975.
Section 13A-l-2(5), (7), Ala.Code 1975, defines “dangerous instrument” and “deadly weapon” as follows:
“(5) Dangerous Instrument. Any instrument, article, or substance which, under the circumstances in which it is used, attempted to be used, or threat *852 ened to be used, is highly capable of causing death or serious physical injury.
[[Image here]]
“(7) Deadly Weapon. A firearm or anything manifestly designed, made, or adapted for the purposes of inflicting death or serious physical injury.”
McMillian argues that there are no circumstances under which teeth can become a deadly weapon based on the holding of the Alabama Supreme Court in Ex parte Cobb, 703 So.2d 871, 877 (Ala.1996):
“In Brock v. State, 555 So.2d 285, 287 (Ala.Crim.App.1989), the Court of Criminal Appeals quoted an annotation as stating that the view that fists can be considered deadly weapons or dangerous instruments is a minority view. Annot., Parts of the Human Body as Dangerous Weapons, 8 A.L.R.4th 1268 (1981). Our research indicates that the better-reasoned cases do not allow body parts, without more, to be considered deadly weapons or dangerous instruments.
“Further evidence that the legislature did not intend for fists to be considered deadly weapons or dangerous instruments is the fact that a person can be convicted for second-degree assault for intentionally inflicting serious physical injury on another person. Ala.Code 1975, § 13A-6-21(a)(l). This section does not mention the use of a deadly weapon or dangerous instrument; instead, it simply requires ‘serious physical injury.’ However, § 13A-6-20(a)(l) provides that a person who causes serious physical injury to any person by means of a deadly weapon or dangerous instrument commits assault in the first degree. If the legislature intended fists to be considered as deadly weapons or dangerous instruments, then there would be no objective basis for distinguishing a first-degree assault under § 13A-6-20(a)(l) from a second-degree assault under § 13A-6-21(a)(l). If fists may be dangerous instruments, there is no basis for determining whether an offense constitutes a first- or second-degree assault. If the elevation in seriousness is made to depend upon the use of an implement apart from the assailant’s own body, then there is a rational basis for this elevation and fan* notice to an assailant that the use of a weapon or injurious implement will increase the seriousness of his crime.
“ ‘In enacting a criminal statute, there is an obligation on the State to so frame it that those who are to administer it and those to whom it is to be administered may know what standard of conduct is intended to be required and legislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law’s enforcement.’
“Kahalley v. State, 254 Ala. 482, 483, 48 So.2d 794, 795 (1950). See also Esco v. State, 278 Ala. 641,179 So.2d 766 (1965); State v. Gooden, 570 So.2d 865 (Ala.Crim.App.1990).
“We hold that the use of fists or other body parts cannot constitute the use of a ‘deadly weapon’ or ‘dangerous instrument’ as those terms are defined in § 13A-1-20.1) and § 13A-1-2(12).”
We acknowledge that “objects” that are not deadly per se may constitute “dangerous instrument[s]” if they are used in a manner that renders them “readily capable of causing death or serious physical injury.” Commentary to § 13A-1-2, Ala.Code 1975. Further, this Court has held multiple times that various implements and objects, under appropriate circumstances, can become deadly weapons:
*853 “See also Buchanan v. State, 602 So.2d 459, 460 (Ala.Crim.App.1992) (‘This court has stated that an item may become a ... deadly weapon depending on the manner in which the item is used. Davis v. State, 470 So.2d 1340 (Ala.Cr.App.1985); Austin v. State, 555 So.2d 324 (Ala.Cr.App.1989).’). In fact, this court has repeatedly held that items that are not specifically listed in § 13A-1-2(7), Ala.Code 1975, constituted deadly weapons based on the manner in which they were used. See Harris v. State, 705 So.2d 542 (Ala.Crim.App.1997) (holding that a 16-ounce glass soft drink bottle was a deadly weapon as used in the case); Garrison v. State, 521 So.2d 997 (Ala.Crim.App.1986) (holding that a board constituted a deadly weapon under the circumstances of the case); Jones v. State, 523 So.2d 518 (Ala.Crim.App.1987) (holding that a tire tool constituted a deadly weapon based on the manner in which it was used); Hill v. State, 516 So.2d 876 (Ala.Crim.App.1987) (holding that a baseball bat constituted a deadly weapon); Goolsby v. State, 492 So.2d 635 (Ala.Crim.App.1986) (holding that a hammer, as used by the appellant in that case, constituted a deadly weapon). But see Ex parte Cobb, 703 So.2d 871 (Ala.1996) (holding that fists or other body parts cannot constitute deadly weapons); Buchanan, supra (holding that thrown plastic flashlight did not constitute a deadly weapon).”
Harris v. State, 873 So.2d 1171, 1172-73 (Ala.Crim.App.2003).
However, the Alabama Supreme Court has held that body parts, without more, are not deadly weapons or dangerous instruments.
Here, testimony was presented at trial that McMillian used his mouth and/or teeth to remove Addison’s eyeball from its socket and that Addison is now blind in that eye. Although we have no doubt that McMillian inflicted a serious injury upon Addison by blinding her in one eye, the injury was inflicted by the sole use of McMillian’s mouth and/or teeth, which without more, does not constitute the use of a deadly weapon or a dangerous instrument. For the above stated reasons, the trial court erred in denying McMillian’s motion for a judgment of acquittal. Therefore, we reverse McMillian’s conviction for first-degree domestic violence. Because the jury was also charged on second-degree domestic violence, we remand the case to the trial court with instructions to enter a judgment of guilty of the lesser-included offense of second-degree domestic violence and to impose a sentence for that offense. See Brand v. State, 960 So.2d 748 (Ala.Crim.App.2006) (holding that appellate courts have the authority to reverse a conviction and order an entry of judgment on a lesser-included offense). The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.[2]
REVERSED AND REMANDED WITH INSTRUCTIONS.
WINDOM and MAIN, JJ., concur. WISE, P.J., concurs specially, with opinion, which KELLUM, J., joins.

. Discussed infra.

. Because of our disposition of this case, we pretermit discussion of the remaining claim that McMillian raises in his brief to this Court.